IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ALLEN LANIER,

               Defendant.

CRIMINAL ACTION
NO. 22-469

## OPINION

**Slomsky, J.**                                                     **November 29, 2023**

## I.    INTRODUCTION

Defendant Allen Lanier is charged in a one count Indictment with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).[1]  (Doc. No. 1.)  Before the Court is Defendant's Motion to Dismiss the Indictment (the "Motion").  (Doc. No. 27.)  In his Motion, Defendant argues that 18 U.S.C. § 922(g)(1) is unconstitutional for two reasons. (Doc. No. 27 at 1-3.)  First, 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him following the United States Supreme Court decision in New York Rifle Association, Inc. v. Bruen, 142 S. Ct. 2111, (2022) and the Third Circuit decision in Range v. Attorney General, 69 F.4th 96 (3d Cir. 2023).  (Id. at 1-2.)  These cases essentially held that restrictions on the possession of firearms must comport with the history and

---

[1]    18 U.S.C. § 922(g)(1) provides:

> (g) It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year…
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

tradition of the Nation to be constitutional.  Second, 18 U.S.C. § 922(g)(1) is facially unconstitutional, vague, and inconsistent with the original public meaning of the Commerce Clause.

In response, the Government submits that 18 U.S.C. § 922(g)(1) is constitutional as applied to Defendant for three reasons.  (Doc. No. 28.)  First, Defendant did not possess firearms for a lawful purpose.  (Id. at 15.)  Second, Defendant was permissibly barred from possessing a firearm while on parole.  (Id.)  Third, the prohibition on firearm possession for a felon is constitutionally permissible based on the historical test outlined in Bruen.  (Id.)  The Government further argues that Defendant's facial challenge fails because he did not show that 18 U.S.C. § 922(g)(1) is unconstitutional under all conceivable circumstances.  Further, it is not void for vagueness because it provides clear standards and fair notice of what conduct is prohibited.  (Id. at 30-33.)  Finally, the Government maintains that Defendant's arguments under the Commerce Clause are barred by Supreme Court precedent. (Id. at 33.)

For the reasons that follow, Defendant's Motion will be denied.

## II.     BACKGROUND

Prior to the charged offense, Defendant had multiple convictions.  (Doc. No. 27 at 9.)  On March 26, 2016, he was convicted of three offenses stemming from a 2012 shooting.  His convictions stem from his guilty pleas to: (1) aggravated assault, a felony of the first-degree, (2) carrying a firearm without a license, a felony of the third-degree, and (3) possession of a prohibited firearm, a misdemeanor of the first-degree.  (Id.)  These three offenses violated 18 Pa. Const. Stat. §§ 2702(A), 6106(A)(1), and 6105(A)(1).  (Id.)  Defendant committed the 2012 shooting while on probation for convictions of simple assault and resisting arrest, in violation of 18 Pa. Cons. Stat.

§§ 2701(A) and 5104.[2]  For the 2016 convictions, Defendant received a total sentence of eight to sixteen years.[3]  (Id.)

In March 2022, while Defendant was on parole, agents from the Pennsylvania Office of the Attorney General ("POAG") received information that Defendant "had been discussing buying, selling, and possessing firearms and selling controlled substances over recorded prison calls with inmates at Pennsylvania state correctional institutions."  (Id. at 1.)   Many of these calls were between Defendant and his brother, Al Lik Lanier, who was incarcerated at SCI Mahoney.  (Id. at 1-2.)  While POAG agents listened to these calls, they determined where Defendant was staying. (Id. at 5.)  Although Defendant told parole agents that he was living with his father, the recorded telephone calls and additional POAG surveillance determined he was living in his girlfriend's apartment.  (Id.)  On June 16, 2022, POAG agents executed a search warrant at Defendant's

---

[2]    In addition to these convictions:

> Lanier was also convicted in 2011 of Intentional Possession of a Controlled Substance (misdemeanor punishable by up to 1 year in prison) and Possession of Marijuana (misdemeanor punishable by up to 30 days in prison), in violation of 35 Pa. Cons. Stat. §§ 780-113(A)(16) and (A)(31).  See Commonwealth v. Lanier, MC-51-CR-0019395-2011. Further, in 2008, Lanier was convicted of Possession of Marijuana (misdemeanor punishable by up to 30 days in prison), in violation of 35 Pa. Cons. Stat. §§ 780-113 (A)(31).  See Commonwealth v. Lanier, MC-51-CR-0014111-2008. In addition, Lanier was found in contempt (summary offense) in 2012, in violation of 42 Pa. Cons. Stat. §§ 4132 (2).  See Commonwealth v. Lanier, MC-51-MD-0002851-2012.  He also accumulated approximately 4 violations of supervision.

(Doc. No. 28 at 9, n.9.)

[3]    As noted, for the 2016 convictions, Defendant received a total sentence of eight to sixteen years.  (Doc. No. 28 at 10.)  It is unclear from Defendant's Motion or the Government's Reply how many years Defendant actually served in state prison.  However, the parties agree that Defendant served a sentence of incarceration that exceeded one year.  (Doc. No. 27 at 3.)  By December 2022, Defendant had been out of state custody "for a few months" and on parole. (Doc. No. 28 at 10.)

girlfriend's apartment, where Defendant was living, and recovered eight firearms, methamphetamine, other drugs, and items related to selling controlled substances.  (Id. at 6-7.) Defendant admitted to the possession of the firearms found in the apartment.  (Id. at 8.)

On December 20, 2022, Defendant was charged in the Indictment with one count of possession of a firearm by a person previously convicted of a crime punishable by more than one year of imprisonment, in violation of 18 U.S.C. § 922(g)(1).  (See Doc. No. 1.)  The Indictment states that Defendant possessed the following eight firearms:

1. a Glock 17 9mm pistol, bearing serial number BPKN323, loaded with 18 rounds of 9mm ammunition;
2. a Beretta 96 Centurion .40 caliber pistol, bearing serial number BER048946;
3. a Springfield Hellcat 9mm pistol, bearing serial number BY405233 loaded with 14 rounds of 9mm ammunition;
4. a Mossberg Maverick Model 88 shotgun, bearing serial number MV68961J, loaded with 3 rounds of ammunition;
5. a Glock 21 .45 caliber pistol, bearing serial number BETT701, loaded with 27 rounds of .45 caliber ammunition;
6. a Smith and Wesson M&P Shield 380, .380 caliber pistol, bearing serial number RDJ6282, loaded with 9 rounds of .380 caliber ammunition;
7. a Taurus Ultralite .38 special revolver, bearing serial number RJ87856, loaded with 5 rounds of .38 special ammunition; and
8. a Sig Sauer P229 .40 pistol, bearing serial number AJU19025, loaded with 13 rounds of .40 caliber ammunition.

(Id. at 1-2.)

## III.   STANDARD OF REVIEW

The Second Amendment to the United States Constitution provides that "the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. AMEND. II.  However, "[l]ike most rights, the right [to bear arms] secured by the Second Amendment is not unlimited."  District of Columbia v. Heller, 554 U.S. 570, 626 (2008).  As the Supreme Court in Heller explained:

From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.  For example, the majority of the 19th-century courts to consider the question held that prohibitions

> on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. (citations omitted).

In New York State Rifle & Pistol Association, Inc. v. Bruen, the Supreme Court established a framework for determining whether a firearm regulation violates the Second Amendment. New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2129-30 (2022). Under Bruen, courts must first decide whether the text of the Second Amendment applies to a person and his proposed conduct. Id. at 2129. If so, "the Constitution presumptively protects that conduct" and the burden shifts to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. "Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-stablished and representative historical analogue, not a historical twin.'" Range, 69 F.4th at 103 (quoting Bruen, 142 S. Ct. at 2133). Only if the Government meets this burden may a court conclude that the individual's conduct falls outside the Second Amendment's protection. Bruen, 142 S. Ct. at 2129.

In Range v. Attorney General, the Third Circuit considered a civil action brought by Bryan Range who sought a declaration that 18 U.S.C. § 922(g)(1) violated the Second Amendment as applied to him. Range, 69 F.4th at 98. Range had pled guilty to one count of making a false statement to obtain food stamps in violation of 62 Pa. Cons. Stat. § 481(a), a conviction that precluded Range from possessing a firearm under 18 U.S.C. § 922(g)(1). Id. In Range, the Third Circuit held that, due to the nature of this prior conviction, the Government did not show that the

Nation's historical tradition of firearm regulation supported depriving Range of his Second Amendment right to possess a firearm.  Id. at 106.

## IV.    ANALYSIS

### A.  Defendant's As-Applied Challenge

Here, Defendant argues initially that in accordance with the Supreme Court decision in Bruen and the Third Circuit decision in Range, 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him.  (Doc. No. 27 at 1-2.)  He contends that, as in Range, the Government will not meet its burden in showing that 18 U.S.C. § 922(g)(1) as applied to him is consistent with the nation's historical tradition of firearm regulation.

In response, the Government submits that 18 U.S.C. § 922(g)(1) is constitutional as applied to Defendant for three reasons.  (Doc. No. 28.)  First, Defendant did not possess firearms for a lawful purpose.  (Id. at 15.)  Second, Defendant was permissibly barred from possession of a firearm while on parole.  (Id.)  Third, under Range, the prohibition on firearm possession for a felon is constitutionally permissible based on the historical test outlined in Bruen.[4]

As described above, to assess constitutional challenges to firearm regulations the Court must decide: (1) whether the text of the Second Amendment applies to Defendant and his conduct and (2) whether the Government met its burden in demonstrating that 18 U.S.C. § 922(g)(1) is consistent with the Second Amendment's text and historical understanding.

---

[4]    In its Response, the Government "maintains that Range, which is the only circuit court decision to conclude that the government did not carry its burden to demonstrate Section 922(g)(1)'s constitutionality as applied to a person with a felony conviction, was wrongly decided and preserves all arguments in support of that position."  (Doc. No. 28 at 11.)  The Government makes its third argument "assuming Range was correctly decided."  (Id. at 15.)  In any event, the Government argues that the present case is distinguishable from Range.  (Id. at 11.)

First, despite his prior convictions, Defendant is "one of the people" protected by the Second Amendment.[5] The Third Circuit has held that "the people" in the Second Amendment text "refers to all Americans and not only law-abiding persons." United States v. Blackshear, 2023 WL 5985284 at *2 (E.D. Pa. 2023) (citing Range, 69 F. 4th at 101). The Government concedes that Defendant is "one of the people" protected by the Second Amendment but argues that the Second Amendment does not extend to his conduct. (Doc. No. 28 at 15.) To determine whether Defendant's conduct falls outside of the Second Amendment's protections, the Court will proceed to the second prong of the Bruen framework.

Second, the Court must evaluate whether the Government met its burden in showing that 18 U.S.C. § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. If so, Defendant's conduct falls outside the Second Amendment's protection. Here, Defendant contends that the Government is unable to identify a tradition of firearm regulation similar to 18 U.S.C. § 922(g)(1)'s applicability to him. (Doc. No. 27 at 4.) The Court disagrees.

Historically, the right to bear arms has been limited. As excerpted above, the Supreme Court in Heller made clear "nothing in our opinion should cast doubt on longstanding prohibitions on the possession of firearms by felons." Heller, 554 U.S. at 626. Therefore, Heller "recognized that § 922(g)(1) is presumptively lawful." United States v. Green, 2023 WL 6164407 at *2 (E.D. Pa. 2023). Further, in Bruen, the Supreme Court struck down a regulation because it "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." Bruen, 142 S. Ct. at 2156. Therefore, the Court "read[s] the Supreme Court's teachings in Heller and Bruen to invalidate firearms restrictions on 'law-abiding' citizens with 'ordinary self-

---

[5] In its Response, the Government does not argue otherwise: "Under Range, the [D]efendant is one of 'the people' protected by the Second Amendment." (Doc. No. 28 at 15.)

defense needs.'" <u>United States v. Pearson</u>, 2023 WL 6216527 at *2 (E.D. Pa. 2023). Defendant's multiple violent felony convictions and firearm offenses make him unlike the law-abiding individuals protected under <u>Heller</u> and <u>Bruen</u>.

This case is also distinguishable from <u>Range</u>. In <u>Range</u>, the Third Circuit held that 18 U.S.C. § 922(g)(1) was unconstitutional as applied to Bryan Range. Range was previously convicted of making a false statement to obtain food stamps. Pursuant to 18 U.S.C. § 922(g)(1), this conviction precluded Range from possessing a firearm. Range's conviction was a misdemeanor under state law, and he was sentenced to three-years' probation. <u>Range</u>, 69 F.4th at 98. Other than this conviction, Range's criminal history was "limited to minor traffic and parking infractions and a summary offense for fishing without a license." <u>Id</u>. These convictions did not fall within the category of convictions for which there were long standing prohibitions on the possession of firearms.

Here, Defendant's circumstances are unquestionably different than those in <u>Range</u>. The Third Circuit made clear that the decision in <u>Range</u> "is a narrow one" and "[b]ecause the Government has not shown that our Republic has a longstanding history and tradition of depriving people <u>like Range</u> of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." <u>Range</u>, 69 F.4th at 106 (emphasis added). Defendant is markedly different from people like Range. "Range pled guilty to a non-violent offense entirely unrelated to armament." <u>Green</u>, 2023 WL 6164407 at 2. Meanwhile, Defendant was convicted of aggravated assault while discharging a firearm that he possessed unlawfully while on probation for other violent crimes. Defendant's criminal history shows repeated violent, drug, and firearm convictions. Therefore, the narrow holding in <u>Range</u> "did not displace [the] presumption [that

prohibitions on the possession of firearms by felons is permissible], which accords with historical tradition." Id.

Further, "[e]ven before the Second Amendment's ratification, firearm regulation disarmed individuals who 'posed a potential danger' to society." Id. As the Government argues, "[c]olonial and early state legislatures likewise disarmed individuals who 'posed a potential danger' to others." (Doc. No. 28 at 23 (quoting NRA v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 700 F.3d 185, 200 (5th Cir. 2012))).

This Court will follow other decisions made in this District finding regulations preventing individuals like Defendant from possessing firearms to be consistent with the Nation's historical tradition of firearm regulation. In United States v. Green, Terrance Green moved to dismiss his 18 U.S.C. § 922(g)(1) charge arguing that the statute was unconstitutional. United States v. Green, 2023 WL 6164407, at *1 (E.D. Pa. 2023). The court denied the motion because the Government met its burden in showing the Nation had a history of disarming individuals who posed a threat to society. Id. at *2. Green, like Defendant, had previous convictions for aggravated assault and unlawful firearm possession. Id. at *1. Similarly, in United States v. Blackshear, the court denied a constitutional challenge to 18 U.S.C. § 922(g)(1) finding that "[t]he understanding that dangerous individuals could be disarmed" existed during the American Revolution and persisted after the ratification of the Second Amendment. Blackshear, 2023 WL 5985284, at *2-3. In United States v. Cotton, the court upheld an 18 U.S.C. § 922(g)(1) charge finding that defendant's prior convictions "place[d] him within the category of those who have been disarmed consistent with the Nation's historical tradition" because his previous conviction for unlawful possession of a firearm "demonstrates, at the very least, that he has a history of disobeying firearm regulations specifically designed to protect public safety." United States v. Cotton, No. CR 22-471, 2023 WL

6465836, at *4 (E.D. Pa. Oct. 4, 2023).  In sum, the Court finds the Government met its burden in showing that disarming dangerous individuals comports with the Nation's historical tradition and "[t]o hold 'section 922(g)(1) unconstitutional as applied to such individuals would effectively strip Congress of the ability to protect the public from a clear and present danger.'"  United States v. Pearson, 2023 WL 6216527, at *3 (E.D. Pa. 2023).

For the reasons described above, Defendant's as-applied challenge to 18 U.S.C. § 922(g)(1) fails.

### B.  Defendant's Facial Challenge

Next, Defendant argues that 18 U.S.C. § 922(g)(1) is unconstitutional on its face, vague, and inconsistent with the original public meaning of the Commerce Clause.  The Court disagrees.

First, 18 U.S.C. § 922(g)(1) is constitutional on its face.  "[A] party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" United States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).  In order to succeed on this argument, Defendant would need to show that 18 U.S.C. § 922(g)(1) is "unconstitutional in all of its applications." Id.  "The fact that § 922(g)(1) might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid."  Salerno, 481 U.S. at 745.  Here, Defendant failed to meet this burden. As discussed above, Defendant failed to show that 18 U.S.C. § 922(g)(1) is unlawful even as applied to him, let alone in all possible circumstances.

Second, 18 U.S.C. § 922(g)(1) is not vague.  A criminal statute is impermissibly vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  United States v. Williams, 553 U.S. 285, 304 (2008).  18 U.S.C. § 922(g)(1) provides explicit notice that it bars

the possession of a firearm by any person who has been previously convicted of a crime punishable by more than a year in prison.  Therefore, the statute provides clear standards and fair notice of what is prohibited.

Finally, Defendant's argument that 18 U.S.C. § 922(g)(1) is inconsistent with the original public meaning of the Commerce Clause fails.  As Defendant acknowledges, precedent forecloses this argument.[6]  See United States v. Singletary, 286 F.2d 196 (2001).

## V.    CONCLUSION

For these reasons, Defendant's Motion to Dismiss the Indictment (Doc. No. 27) will be denied.  An appropriate Order follows.

---

[6]    Defendant asserts for preservation purposes that 18 U.S.C. § 922(g)(1) is inconsistent with the original public meaning of the Commerce Clause but acknowledges that "the Supreme Court's New Deal precedents and their progeny continue to foreclose this Court from second-guessing these decisions' broad view of Congress's power to regulate commerce."  (Doc. No. 27 at 13.)